## El Pueblo *v.* Dalió.

### Apelación procedente de la Corte de Distrito de Ponce.

No. 435.—Resuelto en junio 18, 1912.

Derecho Penal—Venta de Leche Adulterada—Incongruencia de las Alegaciones con la Prueba.—El acto de vender leche implica un ofrecimiento por parte del vendedor y la aceptación por parte del comprador, y para que se realice la venta es necesario que se ofrezca la leche en venta. No constituye, pues, incongruencia de las alegaciones con la prueba, el hecho de que a un acusado de ofrecer en venta leche adulterada, se le pruebe que la leche que estaba ofreciendo en venta era pura y que la que había vendido momentos antes había resultado adulterada.

Id.—Pruebas—Análisis Químico.—Las palabras "adulterada con agua," que bajo el epígrafe de "notas" u "observaciones" aparecen en la certificación expedida por un químico del análisis químico de una leche adulterada, no constituyen la parte esencial de dicha certificación, especialmente constando de dicho documento que la leche sólo tenía un 10.16 por ciento de materia sólida, y para que fuera pura, debía tener por lo menos un 12 por ciento.

Id.—Prueba Contradictoria—Apreciación del Tribunal Sentenciador.—Cuando la prueba es contradictoria la apreciación que de la misma haya hecho el tribunal sentenciador, no será generalmente alterada por este tribunal, a menos que se demuestre que actuó movido por parcialidad, prejuicio o pasión o que cometió manifiesto error.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Felipe Casalduc.*

Abogado del apelado: *Sr. Charles E. Foote, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

En esta causa el apelante fué declarado culpable de un delito contra la salud pública, por infringir la ley relativa al castigo de las personas que sean culpables de adulterar leche. La denuncia expresa que el día 30 de enero de 1912, en la ciudad de Ponce, el acusado Bartolo Dalió ofreció en venta al público como pura, lecha de vaca que había sido adulterada. El acusado hizo la alegación de no culpable y el día 29 de febrero, celebrado el juicio ante la corte, fué declarado culpable y condenado a treinta días de prisión en la cárcel y al pago de las costas. Contra esta sentencia interpuso el acusado recurso de apelación y alega varias razones en las cuales se funda para solicitar la revocación de la sentencia.

Alega en primer término que la leche que ofreció en venta era pura y sostiene el hecho de que el inspector que examinó la leche que se encontraba en sus vasijas y que se llevaba en el carro para la venta, la encontró pura, a pesar de que de un examen y prueba que se hizo de dos medias botellas de leche que estaban en posesión de Ana Semiday, se había encontrado que estaba adulterada. El acusado niega en su declaración que él vendiera esta leche o por lo menos manifiesta que no sabe si la vendió o nó y alega además, que una de las medias botellas se obtuvo de manos de la señora y la otra de la casa de ésta. Ana Semiday expresa en su declaración, que compró ambas medias botellas al acusado y que el inspector MacDonald cogió una de éstas de sus manos cuando ella se encontraba parada cerca del carro y la otra se la llevó y la tenía en la casa debajo de una silla. Alega el acusado que existe discrepancia entre las alegaciones y la prueba, a saber: que a él se le acusaba de ofrecer para la venta y no de vender leche adulterada y sin embargo, la prueba demuestra que la leche que él ofreció en venta o sea la que se encontraba en el carro era pura y que aquella que se encontró adulterada ya había sido vendida. En contestación a ésto se ha dicho que la venta de la leche incluye la oferta por parte del vendedor y la aceptación por el comprador, y para que se realice completamente la venta, debe ofrecerse el artículo para la venta. Esto es evidentemente razonable y lógico y la prueba es más bien una ilusoria que real.

El apelante alega en segundo lugar, que en la certificación del químico solamente aparecen las consideraciones que él hace de que la leche se había adulterado con agua. Es cierto que en la certificación y bajo el epígrafe de ''notas,'' u ''observaciones,'' aparecen las palabras ''adulterada con agua''; pero esta no es la parte esencial de la certificación, que demuestra la composición de la leche que fué examinada y que el fluído contenía 10.16 por ciento de materia sólida, y que si la leche hubiera sido pura hubiera resultado por lo menos un 12 por ciento. Este hecho demuestra clara-

mente que la conclusión, si así puede llamarse del químico, de que la leche había sido adulterada con agua fué correcta, pudiendo la corte estar en condiciones de llegar a esa conclusión en vista de los hechos lo mismo que el químico.

En tercer lugar alega el acusado, que una de las medias botellas de leche que fueron examinadas se tomó de la casa, y la otra del testigo (la mujer que declaró) y que no se hizo la prueba de esa leche en el sitio en que se encontraba presente el acusado sino en el puesto de un vendedor que estaba cerca, y que el acusado no vendió la leche que fué sometida a la prueba. Esto en parte es una repetición de la primera defensa. La prueba es contradictoria con respecto al hecho de si la prueba fué o nó tomada en presencia del acusado. El dueño del puesto Gabriel Vélez declaró que Dalió se encontraba algunas veces en su carro y otras yendo y viniendo y no hay nada que demuestre que estuviera impedido de observar el procedimiento y las operaciones del inspector que hizo la prueba si así lo hubiera deseado, y no aparece que se le haya ocasionado algún perjuicio por haberse cometido alguna irregularidad, si es que se cometió, al proceder a hacer la prueba.

El apelante se funda en último término en la duda razonable que existe con respecto a su culpabilidad según aparece de los autos. Como se trató de probar que los hechos no justificaban la declaración que se hizo de culpabilidad del acusado, insertaremos en toda su extensión las declaraciones prestadas por los dos testigos principales, a saber:

El inspector James D. MacDonald declaró como sigue:

"Que vivió en Ponce y desempeñaba el cargo de inspector de leche y que en 30 de enero de 1912 se encontraba en la Calle Brigadier Castro donde vió a Dalió vender leche a una señora llenándole dos botellas de una vasija; que entonces él probó la leche en una de las botellas y resultó muy mala; que el acusado Dalió le dijo que lo que debía probar era la leche que llevaba en su carro para la venta; que probó la leche de Ana Semiday con la medida; que no la encontró buena y tomó tres muestras de ella enviando una a San Juan el mismo día; que marcó la muestra 'No. 14 J. D. M. D., Enero 30, 1912,' y que el

químico de San Juan le envió el informe que se expidió, el cual fué presentado en el juicio y aceptado como prueba por el Fiscal y la defensa. Que él también probó la leche que Dalió llevaba para vender en su carro y estaba buena, siendo esta prueba de la leche hecha en tres o cuatro botellas y también en la vasija. Que llevó la leche que recibió de la mujer al puesto de leche de Gabriel Vélez y allí fué donde la probó con su aparato, dando después una muestra de la leche así probada a Dalió y enviando la otra a San Juan; y en otra ocasión él probó la leche que el acusado vendía y también la encontró buena; que hizo esto en la calle en frente del carro en donde tomó la muestra de la leche, pero en la siguiente vez hizo la prueba en el puesto de Gabriel Vélez, porque allí había un sitio donde podía colocar su pequeño aparato; que llenó las dos botellas que pertenecían a la mujer con leche de la vasija, y este mismo testigo fué el que entregó a la mujer toda la leche que había allí en la vasija; y que Dalió estaba presente cuando el testigo hizo la prueba de la leche y tomó las muestras.''

Ana Semiday declaró como sigue:

''Que reside en Ponce; que tiene por costumbre comprar leche a Dalió y que en 30 de enero de 1912 cuando éste vendía leche, el inspector se presentó y tomó media botella que ella tenía en su mano y después la otra media botella que había llenado y colocado debajo de una silla en un cuarto de su casa; que él la vació en un envase y allí tomó la prueba y después de hacerlo salió el inspector con Dalió, no sabiendo la testigo lo que ocurrió entre ellos; que cuando ella entregó las dos medias botellas a Dalió para que las llenara con leche estaban vacías y al terminar de llenar la segunda botella llegó el inspector. Que su casa está en la esquina de las calles Capitán Correa y Brigadier Castro.''

Los otros testigos corroboran las declaraciones, exceptuando el acusado que las contradice en algunos puntos que no son esenciales. La corte parece haber aquilatado debida y correctamente la prueba en aquellos puntos en que aparece ser contradictoria. Y no hay nada que demuestre que haya habido parcialidad, prejuicio o pasión o error manifiesto al considerar la prueba.

Examinando los autos en conjunto y aplicando la ley a los hechos, resulta suficientemente claro a nuestro criterio

que se ha hecho completa justicia al declarar culpable al acusado, debiendo por consiguiente, confirmarse la sentencia.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.